**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**UNITED STATES OF AMERICA**

**-vs-**                                                    **Case No.  6:04-cr-118-Orl-22DAB**

**WILLIAM E. BAKER, JR.
RACHEL BAKER
RICHARD H. MACLEAN, JR.
CHARLES DEWEY TOBIAS, JR.**

_____

# ORDER

## I.  INTRODUCTION

This cause comes before the Court for consideration of Defendants Richard H. MacLean, Jr., Charles Dewey Tobias, Jr., and Rachel Baker's motions for release from custody pending appeal (Docs. 344 & 346), and the United States' legal memoranda (Docs. 351 & 354) opposing such motions.  After carefully considering the matter, the Court determines that the Defendants have failed to demonstrate entitlement to release.

## II.  LEGAL STANDARD

A defendant is entitled to release pending appeal if he or she demonstrates:

> (1) that the defendant is not likely to flee or pose a danger to the safety of any other person or the community if released;
> (2) that the appeal is not for purpose of delay;
> (3) that the appeal raises a substantial question of law or fact; and
> (4) that if that substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed.

*United States v. Giancola*, 754 F.2d 898, 901 (11th Cir. 1985) (interpreting 18 U.S.C. § 3143(b)).[1] Regarding the third requirement, "a 'substantial' question is one of more substance than would be necessary to a finding that it was not frivolous." *Giancola,* 754 F.2d at 901. In other words, "[i]t is a 'close' question or one that very well could be decided the other way." *Id.* The convicted defendant bears the burden of establishing the foregoing factors. *Id.* The first element (flight/danger) must be proved by clear and convincing evidence. *See* 18 U.S.C. § 3143(b)(1)(A).

## III. ANALYSIS

All of the movants were convicted of conspiracy to obstruct a federal grand jury investigation, to tamper with witnesses, to conceal objects from a grand jury, and to commit perjury (18 U.S.C. § 371); and of the substantive offense of obstructing a federal grand jury investigation (18 U.S.C. § 1503). Defendants MacLean and Tobias were also convicted of witness tampering (18 U.S.C. § 1512(b)). MacLean was additionally convicted of concealing an object from the grand jury (18 U.S.C. § 1512(c)). Rachel Baker[2] was convicted of additional offenses of perjury (18 U.S.C. § 1623) and forcibly resisting a federal officer (18 U.S.C. § 111).[3] The Court imposed the following sentences of imprisonment: MacLean - 48 months, Tobias - 24 months, and Rachel Baker - 27 months.

---

[1]Regarding the final element, release pending appeal may also be warranted when the appeal is likely to result in "a sentence that does not include a term of imprisonment" or "a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process." 18 U.S.C. § 3143(b)(1)(B)(iii) & (iv).

[2]The Court uses Rachel Baker's first name to distinguish her from co-defendant William E. Baker, Jr.

[3]The forcibly resisting charge was severed and tried separately.

## A.  MacLean and Tobias's Motion

MacLean and Tobias are not entitled to release because they have not met the third element articulated in *Giancola,* i.e., that their appeal raises a "substantial question of law or fact."  754 F.2d at 901.[4]

MacLean and Tobias have raised a host of issues they contend raise "substantial" appellate questions.  First, the movants argue that "the very nature of the charges against [them] are violative of the Free Exercise Clause, the Free Expression Clause, the Assembly Clause and the Right to Petition Clause of the First Amendment to the United States Constitution."  Doc. 344 at 9.  More particularly, these defendants maintain that they "have literally been charged with eating lunch at a public restaurant with their friends and family, and discussing a means of putting as much information before the Grand Jury as possible with regard to their beliefs that the Internal Revenue Code was incomprehensible and unintelligible."  *Id.*  Not only is this argument insubstantial, it is frivolous.  There was ample evidence supporting the movants' convictions; it is ludicrous to suggest that the Defendants were convicted for having an innocent chat over lunch.

---

[4]Given its determination that no "substantial" appellate issue is presented, the Court need not address the first, second and fourth *Giancola* elements.  However, concerning the first *Giancola* requirement, the Court notes that the Government does not make a typical "danger to the community" argument, in the sense of asserting that these Defendants pose a threat of physical harm to the public. Instead, the Government asserts, *inter alia*, that these Defendants have a "propensity to commit crime," and that this "constitutes a sufficient risk of danger to the community" to warrant denial of release, "even if the harm is not physical."  Doc. 351 at 4 & 9.  The Court agrees with the Government that the concept of "dangerousness" under the Bail Reform Act is given a broad construction; it encompasses more than danger of harm through physical violence and includes the risk that a defendant will harm the community through criminal activity.  *See United States v. King*, 849 F.2d 485, 487 n.2 (11th Cir. 1988).

Second, MacLean and Tobias raise several arguments concerning the grand jury that issued the indictments against them.  The movants complain that they were not allowed to inspect the grand jury concurrence.  However, in accordance with *United States v. Deffenbaugh Indus., Inc.,* 957 F.2d 749, 755-57 (10th Cir. 1992), this Court reviewed the grand jury concurrence records *in camera* and issued a written order stating that "both records contain twelve or more votes to indict."  Doc. 136 at 1.[5]  Accordingly, the Court ruled that the concurrence records need not be produced.  *Id.*  No "close" question arises from this ruling.

The movants also complain that although the Court granted co-defendant William Baker's motion to inspect grand jury selection records, "the Clerk's office refused to furnish any pertinent information with regard to the Grand Jury selection records on two different occasions."  Doc. 344 at 10.  The Defendants are correct in stating that Magistrate Judge Baker issued an order permitting Defendant William Baker (or more accurately, his designee) to inspect some grand jury selection records.  However, the only information Judge Baker ruled Defendant Baker was entitled to inspect was the  "2001 Master /Qualified Jury Wheel Statistical Analysis and Report on the Random Selection and Proportional Representation; and . . . the list of grand jurors identified by number and county only, with the names and street addresses of the grand jurors redacted."  Doc. 127 at 7.  Judge Baker decided that William Baker had "shown no need for the names and specific addresses of grand jurors, save for their particular county of residence."  *Id.*  William Baker's motion was also denied insofar as it sought access to grand jury transcripts.  *Id.* at 5.  The bottom line is that the movants have failed to show that the Clerk withheld any particular information that

---

[5]Two indictments were issued in this case; an initial Indictment (Doc. 1) and a First Superseding Indictment (Doc. 87).

Judge Baker ordered the Clerk to make available for inspection.  They also have failed to demonstrate that they were legally entitled to inspect records to which they were denied access.

The movants also raise complaints concerning a "Grand Jury concurrence form" (they refer to this as "OMD Form 34") which they contend should have been attached to the indictment, but which is "missing."  Doc. 344 at 11.  This is puzzling, because there is a "FORM OBD-34" attached to the First Superseding Indictment, which is the instrument containing the charges on which the Defendants were tried.  *See* last page of Doc. 87.  The movants also seemingly complain about the fact that the Clerk's signature is missing from that form.  This argument, too, is baseless.  As Magistrate Judge Glazebrook stated in his November 1, 2004 "text entry" Order addressing this matter,

> The Grand Jury foreperson signed the First Superseding Indictment on the last page, and also signed an ornamental "litigation back" attached to the end of the Superseding Indictment 87 that had been prepared by the Office of the United States Attorney.  The undersigned then held a public, recorded hearing on July 12, 2004 in which the foreperson of the Grand Jury presented the Superseding Indictment on behalf of the Grand Jury, and the undersigned declared the indictment returned.  See Transcript, Docket No. 254 at 4.  The Clerk also kept minutes of the July 12, 2004 return hearing, and filed those minutes in the nonpublic Grand Jury Log of sealed and unsealed indictments.  Although the Clerk unquestionably filed the First Superseding Indictment on July 12, 2004, the Clerk did not also sign the "litigation back" under the words "Filed in open court this 12th day of July, A.D. 2004."  The absence of the Clerk's signature has no legal effect.

Doc. 256.  This does not raise a "substantial" question concerning the validity of the First Superseding Indictment.[6]

---

[6]The movants' other arguments concerning the grand jury do not merit discussion.

Next, MacLean and Tobias assert that they were denied their right to counsel. This argument is flat wrong; the Court knows of no other way to put it. The movants' right to counsel was scrupulously honored, despite the transparent efforts of these Defendants to manipulate the court system concerning the counsel issue.

MacLean and Tobias informed the Court that they wished to retain private counsel.[7] Throughout the pretrial phase of this case, Magistrate Judge Baker repeatedly warned these Defendants that they must act quickly to hire attorneys in order to afford counsel adequate time to prepare for the scheduled trial. *See, e.g.*, Transcript of May 26, 2004 Arraignment on Indictment (Doc. 286); Transcript of June 15, 2004 Hearing on Status of Counsel (Doc. 317). Judge Baker also warned these Defendants of the likely dire consequence of their failure to retain counsel: they would be deemed by their conduct to have waived the right to be represented by an attorney at trial, and would have to represent themselves. *See* Doc. 317. Notwithstanding these warnings, and despite the fact that this case was continued a number of times, thereby affording the movants more than sufficient time to procure counsel, the Defendants did not do so.

On the morning of the first day of trial, Tobias announced: "I've decided to retain counsel. I was not financially able to. I believe I've got the money issues worked out and I'm here to exercise my Fifth and Sixth Amendment right to counsel." Transcript of October 4, 2004 Trial Proceedings (Doc. 269) at 4. Tobias's statement suggesting prior financial inability to retain counsel was flatly inconsistent with representations he had made to the Court. In that regard, at

---

[7]Although an assistant Federal Public Defender was initially appointed for Tobias, that office had to withdraw as a result of a conflict. *See* Transcript of May 26, 2004 Arraignment (Doc. 286) at 4-6. Tobias indicated that he had the financial and practical ability to retain private counsel, *id.* at 7, and stated that he would "start interviewing right away for competent counsel," *id*. at 5.

the time the Federal Public Defender withdrew from representing Tobias, Judge Baker noted that

Tobias had previously indicated he might try to hire counsel.  Transcript of May 26, 2004

Arraignment on Indictment (Doc. 286) at 5.  Tobias replied: "That is correct, Your Honor.  I will

interview - - I'll start interviewing right away for competent counsel."  *Id.*  Later in the proceeding,

Judge Baker specifically asked Tobias: "It's your view, sitting here today, that you think you will

be financially able and, as a practical matter, be able to hire someone?"  *Id.* at 7.  Tobias

responded: "That is my view at this time, yes."  *Id.*  Thereafter, Judge Baker followed up on the

counsel issue at a status conference specially set for that purpose.  When Judge Baker asked Tobias

to explain his situation concerning retaining counsel, Tobias stated that he had "interviewed two

potentials" and that he had "another interview tomorrow afternoon by phone."  Transcript of June

15, 2004 Hearing on Status of Counsel (Doc. 317) at 4.  Tobias said nothing whatsoever about

financial inability to hire counsel.  Tobias added, "I may hire an attorney, but at this point in time

I do not waive my right to an attorney or right to counsel, and I'm not sure how I can do that by

acquiescence."  *Id.*  Judge Baker then stated:

> Well, you heard what I just said to Mr. Mac[L]ean.  When the case
> is scheduled for trial and is going to go forward, and if you don't
> have an attorney, you won't have an attorney.  It's sort of a
> tautology; by not hiring one, you are in effect waiving your right to
> an attorney if you don't show up with one.
>
> The alternative to that, which we talked about at your first
> appearance and I think I understand both of you on this, this really
> doesn't apply, but just to repeat myself, that if you're not able to
> afford an attorney and you want me to appoint one for you, I will do
> that.
>
> Now, you have not made any application for that and you haven't
> given me any information that suggests that you are unable to hire
> an attorney.  So I'm working on the assumption that you're

> financially able to hire an attorney and you've simply not done so
> so far.  Is that true?

*Id.* at 4-5.  The Defendants offered  no response to Judge Baker's specific question regarding their financial ability to hire counsel.  *Id.* at 5.  When Judge Baker added, "You don't need to tell me about your financial situation," MacLean changed the subject, stating: "Well, I haven't done so so far because I haven't found one that I think is competent."  *Id.*

At that same hearing, Judge Baker also issued this warning:

> . . . Any attorney coming in to represent you will want some time to
> prepare for the case, and that time is precious short already.
>
> A further passage of time between now and trial will make it that
> much more difficult for an attorney to come in, and Judge Conway
> may or may not grant further time under these circumstances if you
> do show up with an attorney.  If an attorney were to show up
> tomorrow and ask for more time, Judge Conway would certainly
> consider that; but I can't guarantee you that she would give that
> attorney any more time.  Certainly as it gets closer to the trial date,
> if you show up with an attorney, she'll be even more skeptical about
> that attorney's request for more time, although I'm certain she
> would give it fair consideration.
>
> There's a lot of work to do, whether it's for you or for your
> attorneys, to get this case ready.  Again, I may be stating the
> obvious to you, but showing up with an attorney two weeks or a
> week or two hours before the trial is called is not going to be a
> certain ground to get the thing continued.  I just wanted to make
> sure you were aware of that.  Again, I'm pretty confident that you
> can sense that that's the way things can go.

*Id.* at 21-22.

Returning to the first day of trial, the Court responded to Tobias's claimed recent "decision" to retain counsel by asking Tobias if he had an attorney present in the courtroom. Tobias replied, "No, Ma'am, he's not here.  I'm interviewing with him today."  Transcript of

October 4, 2004 Trial Proceedings (Doc. 269) at 4.   Refusing to countenance such blatant gamesmanship, the Court denied Tobias's request for a continuance, ruled that Tobias had waived his right to counsel, and announced that the trial would proceed as scheduled.  The Court also ruled that Defendant MacLean had waived his right to counsel.  *Id.* at 13-14

MacLean and Tobias are intelligent, sophisticated individuals.  Their "failure" to retain private counsel was a delaying tactic, plain and simple.   "The right to assistance of counsel, cherished and fundamental though it be, may not be put to service as a means of delaying or trifling with the court."  *United States v. Fowler,* 605 F.2d 181, 183, *reh'g denied,* 608 F.2d 1373 (5th Cir. 1979),[8] *cert. denied,* 445 U.S. 950 (1980); *United States v. McLeod,* 53 F.3d 322, 325 (11th Cir. 1995) (quoting *Fowler*).  If these Defendants can succeed with such a ploy, then any defendant can easily do the same.  Just as Judge Baker warned, the movants waived - or, more properly, forfeited - their right to counsel by their conduct.  *See Fowler,* 605 F.2d at 183 (holding that the district court did not err in refusing the defendant's request for additional time to retain counsel and in requiring the defendant to proceed *pro se* at trial); *McLeod*, 53 F.3d at 325 (citing *Fowler* for the proposition that "[t]he Sixth Amendment right to counsel . . . may be forfeited by a defendant's failure to retain counsel within a reasonable time, even if this forfeiture causes the defendant to proceed *pro se*).[9]   In sum, there is no "close" appellate issue here.

---

[8]In the *en banc* decision of *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

[9]In a footnote, the *McLeod* court stated: "We discuss 'forfeiture' rather than 'waiver' because waiver implies 'an intentional relinquishment of a known right.'"   53 F.3d at 325 n.6 (citation omitted).

In a related vein, MacLean and Tobias next argue that they made "a myriad of blunders" at trial as a result of being required to proceed without counsel. Doc. 344 at 12. The Court observes as a general proposition that this does not raise a "substantial" appellate issue, for the simple reason that MacLean and Tobias bear legal responsibility for any mistakes they made while representing themselves at trial because, as discussed *supra*, they engaged in a deliberate course of conduct that forfeited their right to counsel. In the words of the former Fifth Circuit, "[c]ounsel's absence was of [movants'] own doing, and [they] must take its consequences." *Fowler*, 605 F.2d at 184 (rejecting appellate argument on partial basis that defendant who forfeited right to counsel and represented himself at trial had voiced no objection to portion of jury charge attacked on appeal). Nevertheless, in the interest of thoroughness, the Court will proceed to address each of the points the movants raise in this section of their brief.

The first "blunder" MacLean and Tobias cite is that "[t]he Court erred when it did not conduct an evidentiary hearing with regard to Case Agent Kelley Lewis Deleo's [sic] presence during the Grand Jury Hearing." Doc. 344 at 13. However, the movants have not shown that they laid any foundation at trial warranting an evidentiary hearing on this point. Accordingly, this argument is insubstantial.

The second point these Defendants raise is that "[t]his Court continuously failed to grant the Defendants' repeated and voluminous motions for *Brady* material and to access the Grand Jury minutes." *Id.* This conclusory allegation is meritless. The Government was ordered to disclose *Brady* material, *see* Criminal Scheduling Order (Doc. 50) at 5, and the movants have not raised any colorable claim that materials actually covered by *Brady* were not produced. Moreover, Judge Baker correctly determined that the grand jury minutes need not be produced. *See* Doc. 127 at 4-5.

-10-

Next, MacLean and Tobias argue that "[t]he Court erred when it allowed the Jury to witness Defendant [William] Baker in his prison garb, and while Defendant Baker was shackled, thereby prejudicing all of the Defendants." Doc. 344 at 13. The movants have offered nothing to support the conclusory allegation that William Baker was shackled in the presence of the jury. The Court does not believe this occurred. The undersigned judge, who was in the courtroom every minute the jury was present, never saw William Baker shackled. The Court is well aware of the Eleventh Circuit case law concerning shackling, and would not have allowed William Baker to be shackled while in the courtroom absent serious disruptive behavior on his part. Even then, the Court would have taken steps to prevent the jury from viewing the shackles (by utilizing table drapes). As far as William Baker's prison garb is concerned, the record is abundantly clear that William Baker refused to dress for court after being afforded the opportunity to do so. This is documented by the trial transcript (Doc. 269 at 3) and a jail form prepared when Baker refused to change clothes (Doc. 201). William Baker chose not to change clothes in order to make a statement concerning the conditions of his confinement. Neither MacLean nor Tobias objected to William Baker remaining in his jail uniform, or requested a severance.[10] Moreover, William Baker wore civilian clothes after the first day of trial. Under these circumstances, no "substantial" appellate issue arises from this incident.

Next, MacLean and Tobias contend the Court erred when it denied the Defendants' motion *in limine* seeking to prohibit any reference at trial to the Defendants' beliefs concerning the IRS and the tax system. *See* Doc. 344 at 13. This contention, too, is insubstantial. Any references at

---

[10]Rachel Baker's attorney did not object, either.

trial concerning the Defendants' beliefs about the tax system were either inextricably intertwined with the offenses charged, interjected by the Defendants themselves, or raised by the prosecutor after the Defendants "opened the door" concerning the subject.   After all, it is the movants themselves who state, in their motion for release pending appeal: "These Defendants have literally been charged with eating lunch at a public restaurant with their friends and family, *and discussing a means of putting as much information before the Grand Jury as possible with regard to their beliefs that the Internal Revenue Code was incomprehensible and unintelligible.*" Doc. 344 at 9 (emphasis added).  No "substantial" appellate issue exists on this point.

Additionally, MacLean and Tobias assert that the Court erred when it denied the Defendants' motion to dismiss the indictment for prosecutorial misconduct and motion to strike surplusage from the indictment.  *See* Doc. 344 at 13-14.  These motions were filed on the first day of trial.  The Court denied them because they were untimely under the Criminal Scheduling Orders entered in the case, as well as on the merits.  *See* Doc. 203.[11]  These rulings do not present any "close" issue.[12]

Next, MacLean and Tobias argue that the Court erred "when it allowed the Indictment to go back with the Jury during deliberations, in that the Indictment contained allegations which were untrue and should have been redacted." Doc. 344 at 14.  This argument is specious.  The Court

---

[11]The Court also denied an earlier-filed motion to dismiss alleging prosecutorial misconduct. *See* Doc. 191.

[12]MacLean and Tobias also complain about the denial of a motion for bill of particulars, presumably the one filed by William Baker.  *See* Doc. 344 at 14.  Judge Baker properly denied that motion after finding that the movant was using it as a means of seeking general discovery.  *See* Doc. 135.  No "substantial" appellate issue arises from that ruling.

properly redacted  Count Seven (a severed charge against Rachel Baker) from the First Superseding Indictment and, in accordance with customary practice, provided the redacted charging instrument to the jury during their deliberations.  As far as the "truth" of the allegations contained in the First Superseding Indictment, the jury obviously resolved that issue against the Defendants by finding them guilty on all charges.  In sum, there is no "substantial" appellate issue here.[13]

MacLean and Tobias further argue that "[t]he Court erred by determining that the *scienter* element in this offense was a question for the jury, and by not including a proper jury instruction with regard to *mens rea* and the term 'corruptly,' as applicable to [18 U.S.C.] § 1503 & § 1512." Doc. 344 at 14.  These points are frivolous.  Once the Government presented sufficient evidence to survive a Fed. R. Crim. P. 29 motion, the Defendants' criminal intent obviously became a question for the jury.  Moreover, as required by the Eleventh Circuit Pattern Jury Instructions, the Court instructed the jury concerning the intent elements of the offenses charged.  In its instructions concerning 18 U.S.C. §§ 1503 and 1512, the Court defined "corruptly" precisely as it appears in Eleventh Circuit Pattern Offense Instruction 56.1, which covers obstruction of justice.  *See* Doc. 226 at 17 & 19.

MacLean and Tobias next raise a host of issues regarding audiotapes the United States introduced at trial as Government's Exhibit 1-C.  Specifically, the movants contend the audiotapes were inaudible, that they were not authenticated, that admission of the tapes violated *Crawford v.*

---

[13]The Defendants also argue that "[t]he Court erred when it determined that the Indictment contained necessary overt acts."  Doc. 344 at 14.  The First Superseding Indictment was unquestionably sufficient; no further discussion is necessary.

*Washington,* 541 U.S. 36 (2004), that allowing the jury to read transcripts of the tapes was improper given the tapes' asserted inaudibility, and that the Government's expert stated that only portions of the tapes had been enhanced and that they should not be played to the jury.  *See* Doc. 344 at 14-15.  These points, too, do not present "close" questions for appeal.

  The tapes were authenticated and sufficiently audible.  The transcripts merely served as an aid to the jurors, as the Court told the jury.  Further, Thomas Bushery, the IRS Agent who testified as an expert concerning his enhancement of the audio tapes, never stated that Government Exhibit 1-C should not be played to a jury or that only portions of those tapes had been enhanced.  What Agent Bushery actually said was that, in addition to the set of enhanced tapes he made for use as a trial exhibit (and which were admitted in evidence as Exhibit 1-C), he made identical enhanced copies of the tapes and sent them to the IRS case agent so they could be used for other purposes, such as "for making other copies for other people for transcription; things like that."  Transcript of October 8, 2004 Trial Proceedings (Doc. 273) at 753.  On cross-examination by Defendant MacLean, Agent Bushery reiterated that the second (un-admitted) set of tapes was "intended to be used to make additional copies for prosecutors, defense attorneys, transcriptionists; things like that."  *Id.* at 763.  He explained that his recommendation was that the second (un-admitted) set of tapes "not be used in court simply because of chain of custody issues.  That's why I leave them unsealed."  *Id.*  Further, when Defendant William Baker asked Agent Bushery whether he had "enhance[d] the whole recording . . . from beginning to end," the agent replied, "That's correct, sir."  *Id.* at 765.  Hence, the movants have misrepresented Agent Bushery's testimony, which did not raise any question whatsoever concerning the admissibility of Government Exhibit 1-C, the tapes that were actually introduced in evidence.

Concerning the *Crawford* issue, the Court issued a detailed memorandum of decision explaining why it orally denied MacLean's motion seeking exclusion of Rachel Baker's grand jury testimony and recordings of telephone conversations of unindicted co-conspirator Edward Bruce Baker. *See* Doc. 234. As stated in the memorandum decision, *Crawford* did not bar Rachel Baker's grand jury testimony because the testimony constituted non-testimonial co-conspirator statements which were not offered to prove the truth of the matter asserted. *Id.* at 3. Similarly, the Court determined that the recorded conversations of Edward Bruce Baker were "co-conspirator statements not covered by *Crawford*" and "were not 'testimonial' in nature." *Id.* at 4. In sum, these rulings do not present a "close" appellate question.

Next, MacLean and Tobias assert that "[t]he Court erred when it allowed government witness Mark Pafford to proffer and attest to hearsay evidence and proffer expert testimony." Doc. 344 at 15. This argument, too, is spurious. Mark Pafford did not give expert testimony, and his testimony was admissible under the Federal Rules of Evidence.

Noting that "Apente Management was never charged with a crime in the Indictment," the movants next argue that "[t]he Court erred when it allowed checks written to Apente Management by Servos & Simulation into the record." Doc. 344 at 15. This argument is also insubstantial. As the Government notes in its response to the Defendants' motion for a new trial,

> Checks written to Apente Management by Servos & Simulation were properly admitted into evidence. Defendant [Rachel Baker] was charged with perjury as it related to payments to the MacLeans. These checks were directly relevant to proving that Servos & Simulation had made payments to the MacLeans. Despite Mr. MacLean's efforts to spin the character of the income or to whom it was made, Servos & Simulation clearly paid the MacLeans for services performed at Servos & Simulation.

-15-

Doc. 259 at 4-5.

Finally, MacLean and Tobias assert that the Court erred "in failing to sustain objections to evidence adduced on behalf of the government, to which objections were duly made," and "by denying the Defendants' Motion for Judgment of Acquittal made at the conclusion of the government's evidence." Doc. 344 at 15. These wholly conclusory, unsupported statements are insufficient to demonstrate the existence of any "substantial" or "close" appellate issue.[14]

Based on the foregoing, the Court determines that Defendants MacLean and Tobias are not entitled to release during the pendency of their appeal.

### B.  Rachel Baker's Motion

Rachel Baker is not entitled to release for the same reason:  she has not satisfied the third *Giancola* element, i.e., the requirement that her appeal raises a "substantial" question.

Rachel Baker submits that the Court should have granted her Rule 29 motion as to the perjury charge because the testimony she gave before the grand jury was "literally true."  This argument does not present a "substantial" appellate issue.  A clear jury question was presented

---

[14]MacLean and Tobias also claim error as to their sentences.  As previously noted, a defendant may obtain release pending appeal by showing that a favorable appellate decision will likely result in "a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process."  18 U.S.C. § 3143(b)(1)(B)(iv).  However, this provision remains subject to the statutory requirement that the appeal must raise "a substantial question of law or fact." § 3143(b)(1)(B).  The Court can discern no "substantial" appellate issue arising from the sentences these Defendants received.

concerning whether Rachel Baker lied to the grand jury.[15]  Accordingly, the Court concludes that Rachel Baker is not entitled to release pending appeal.[16]

### IV.  CONCLUSION

Based on the foregoing, it is ORDERED as follows:

1.  Defendants Charles Dewey Tobias, Jr. and Richard H. MacLean, Jr.'s Motion to Remain Released on Bond Pending Appeal (Doc. 344), filed March 8, 2005, is DENIED.

2.  Defendant Rachel Baker's Motion for Bond Pending Appeal (Doc. 346), filed March 10, 2005, is DENIED.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on April 18, 2005.

ANNE C. CONWAY
United States District Judge

Copies furnished to:

Counsel of Record
Pro Se Party
Magistrate Judge
United States Marshals Service

---

[15]Rachel Baker also argues that she was improperly sentenced.  This contention, too, does not present a "close" question on appeal.

[16]Given this determination, the Court need not address the remaining *Giancola* factors.

-17-